[Cite as *COD Properties Ohio, L.L.C. v. Black Tie Title, L.L.C.*, 2022-Ohio-17.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

COD PROPERTIES OHIO, L.L.C.,　　　:

　　　Plaintiff-Appellant,　　　:

　　　　　　　　　　　　　　　　　　　　Nos. 109714 and 109833

v.　　　　　　　　　　:

BLACK TIE TITLE, L.L.C., ET AL.,　　:

　　　Defendants-Appellees.　　　:

JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED AND REMANDED
**RELEASED AND JOURNALIZED:** January 6, 2022

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-19-917765

*Appearances:*

Harold Pollock, Co., L.P.A., and Harold Pollock, *for appellant.*

Stephanie J. Lane, *for appellees.*

EMANUELLA D. GROVES, J.:

**{1}** In this consolidated appeal, COD Properties, L.L.C. ("COD Properties") appeals the trial court's decision to disqualify its attorney, Gregory Glick ("Glick"). For the following reasons, we reverse the decision of the trial court.

## Factual and Procedural History

{2} COD Properties is a limited liability company engaged in the purchase, renovation, and ownership of real property. The managing member of COD Properties is Christopher Ostlund ("Ostlund"), a resident of Oregon. COD Properties would purchase a property and either a) immediately sell the property, b) rehabilitate the property and then sell it, or c) rehabilitate and maintain the property as rental property.

{3} In late 2018, COD Properties identified a property on Edgewood, in Maple Heights, Ohio ("the property") that it wanted to purchase. The property was subject to a foreclosure action and came up for sheriff's sale in early 2019. COD Properties alleged that it hired Black Tie Title, L.L.C. ("BTT") to act as an agent and to purchase properties in Ohio on COD Properties' behalf. Ryan Steigmeier ("Steigmeier") and Nicholas Varner ("Varner") are principal members of BTT.

{4} BTT is a limited liability company engaged in the title business. COD Properties alleged that it gave BTT a check for $5,000 payable to the Cuyahoga County Sheriff to use as a down payment at the sheriff's sale for the property.

{5} Steigmeier acknowledged that he went to the sheriff's sale and filled out the bidding paperwork at the direction of the sheriff's department. However, there was an error in the paperwork. COD Properties alleged that Steigmeier purposefully botched the paperwork; BTT argued that it was inadvertent. In either event, COD Properties was the successful bidder for the property; however, as a result of the

error, Steigmeier's name was placed on the deed. Initially, COD Properties was unaware that its name was not on the deed.

**{6}** Ostlund averred that in June 2019, COD Properties paid the balance due to the Cuyahoga County Sheriff for the property. Around the same time, Ostlund learned that the property was deeded to Steigmeier.

**{7}** Ostlund averred that he encountered Steigmeier at the Cuyahoga County Sheriff's office in June. According to Ostlund, Steigmeier asserted that he was the owner of the property and had located a buyer for it. BTT denied that this occurred. Further, Ostlund alleged the BTT defendants (Steigmeier, Varner, and BTT) refused requests to transfer the property to COD Properties, despite BTT's acknowledgment it did not contribute any funds to the purchase of the property.

**{8}** Nonetheless, the BTT defendants justified their refusal to transfer the property based on what they had learned about COD Properties' business model. Specifically, the BTT defendants argued that COD Properties "wholesaled" homes. That is, COD Properties would acquire an interest in a property by winning the bid at sheriff's sale and then sell the property to a third-party purchaser.

**{9}** In an email exchange between Glick and BTT's attorney, BTT indicated they would transfer the property to COD Properties when the following evidence was shown: 1) proof of payment by every person and entity who paid the purchase price, including the down payment; 2) a written, signed resolution on behalf of every entity involved in COD Properties' "failed" partnership to acquire the property that authorizes Steigmeier to transfer the property to COD Properties; 3) a written

release signed by every person and entity who contributed to the purchase price, which authorizes Steigmeier to transfer the property to COD Properties; and 4) a hold harmless agreement by COD Properties that indemnifies BTT in the event other parties with an interest in the property later challenge the transfer.

{10} COD Properties subsequently filed suit against BTT, Varner, and Steigmeier claiming breach of contract, promissory estoppel, unjust enrichment, quiet title, ejectment, civil theft, conversion, fraud and misrepresentation, conspiracy to commit fraud, conversion, and breach of fiduciary duty. COD Properties also sought additional equitable remedies to preserve and protect their interest in the property.

{11} COD Properties filed a motion requesting that a receiver be appointed to take control of the property and BTT. BTT filed a response, objecting to the appointment of a receiver for the company but agreeing to a receiver to take custody of the property. COD Properties later withdrew the motion for the receiver without stating a reason.

{12} On September 24, 2019, the BTT defendants filed a motion to disqualify COD Properties' attorneys, Glick and Harold Pollock ("Pollock"). The BTT defendants argued that Glick and Pollock were necessary witnesses for the trial in this case. The BTT defendants put forward several theories to support disqualification; however, the most relevant to this appeal is their allegation that COD Properties was engaged in a scheme to misuse the sheriff's sale process.

**{13}** The BTT defendants argued that COD Properties' business model involved the sale of real estate without a real estate license in violation of R.C. 4735.02(A). Although BTT acknowledged having no ownership interest in the property, they argued that they were justified in retaining title to the property in Steigmeier's name due to this illegal scheme and the possibility that another party was the actual owner of the property.

**{14}** BTT alleged that Glick and Pollock were necessary witnesses who could explain and clarify COD Properties' business model as well as identify the actual owner of the property. Furthermore, they argued that the crime-fraud exception to attorney-client privilege applied due to Glick's and Pollock's involvement in COD Properties' illegal business model.

**{15}** The BTT defendants summarized their argument stating that Glick's and Pollock's testimonies were necessary to determine whether a) COD properties was actually the purchaser of the property, or whether COD was acting on behalf of one or more other undisclosed entities; b) whether COD Properties and/or Glick failed to do their due diligence on the property to ensure that the title was placed in the correct entity; c) whether Glick committed malpractice in his representation of COD Properties and whether that malpractice caused the damage to COD Properties; d) whether Glick was engaged in abuse of process and sued the BTT defendants to deflect attention from his own malfeasance; and e) whether COD Properties comes to court with unclean hands. The BTT defendants alleged that the

attorneys' representation was in violation of Prof.Cond.R. 3.7(a), 8.4(c), 1.2(d)(1) and 1.7.

**{16}** In response, COD Properties argued that the BTT defendants' motion was a ruse to prolong the litigation and increase costs. Additionally, they argued that if COD Properties was involved in an illegal scheme, BTT was "in pari delicto," i.e., equally at fault, and could not escape liability by arguing COD Properties was engaged in said scheme. Further, COD Properties argued that BTT failed to establish that the attorneys' testimonies were "necessary" and "unobtainable from other sources." COD Properties also argued that even if the testimonies were relevant, they would be inadmissible due to attorney-client privilege. Finally, COD Properties argued that BTT failed to meet its burden of proof in support of application of the crime-fraud exception to privilege.

**{17}** On April 21, 2020, the trial court ruled on BTT's motion to disqualify Glick and Pollock. Citing Prof.Cond.R. 3.7, the trial court found that Glick was a necessary witness to the litigation due to his role in COD Properties' business model. The court specifically focused on BTT's allegation that COD Properties was involved in an illegal scheme designed to misuse the sheriff's sale process. The court found that Glick's involvement in COD Properties' business made him a necessary party and made his testimony unobtainable from any other source. The court further found that Glick's testimony was relevant and material to the issues being litigated. The court found that its decision would not substantially harm COD Properties since Pollock would be allowed to remain as counsel. The court further found that the

BTT defendants had established probable cause under the crime-fraud exception and therefore the attorney-client privilege would not attach to Glick's testimony.

{18} COD Properties assigns the following errors for our review:

### Assignment of Error No. 1
The trial court erred in disqualifying Appellant's counsel Glick where the motion to disqualify counsel was not timely filed.

### Assignment of Error No. 2
The trial court erred in granting Appellees' motion to disqualify counsel where Appellees failed to demonstrate that the information sought from Glick was not obtainable from any other person.

### Assignment of Error No. 3
The trial court erred in finding that Glick was required to testify about an alleged illegal real estate scheme where such issue was a fabricated misdirection and not relevant to any issue in this case.

### Assignment of Error No. 4
The trial court erred in disqualifying Glick where such disqualifications would work a substantial hardship to Appellant.

### Assignment of Error No. 5
The trial court erred in finding that Glick is a necessary witness where there had been no prior attempt to obtain the discovery sought from other persons and no showing that the testimony sought from Glick was not obtainable from anyone else.

### Assignment of Error No. 6
The trial court erred in finding the crime-fraud exception to be applicable to Glick where there had been an insufficient showing of its application but merely allegations of same.

### Assignment of Error No. 7
The trial court erred in entertaining the meritless defense that a violation of R.C. 4735.02 occurred here where such defense could not possibly be a defense to theft/conversion claims asserted herein.

### Assignment of Error No. 8
The trial court erred in finding that Civ.R. 60(B) cannot be used to correct a legal error made by court where courts can grant motions under rule 60(B)(1) to alter or amend judgment if there is a clear error

of law.  *Gencorp, Inc. v. American Intern. Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999).

**{19}** We find COD Properties' second and fifth assignments of error are dispositive of this appeal.  COD Properties argues that Glick was not a necessary party because BTT failed to establish that his testimony was unobtainable from any other source.  For the following reasons, we agree.

**Legal Analysis**

**{20}**  As a preliminary matter, we note that "disqualification of an attorney is a drastic measure that should not be taken unless absolutely necessary." *Gonzalez-Estrada v. Glancy*, 2017-Ohio-538, 85 N.E.3d 273, ¶ 10 (8th Dist.), citing *Brown v. Spectrum Networks, Inc.*, 180 Ohio App.3d 99, 2008-Ohio-6687, 904 N.E.2d 576, ¶ 11 (1st Dist.), citing *A.B.B. Sanitec W., Inc. v. Weinsten*, 8th Dist. Cuyahoga No. 88258, 2007-Ohio-2116, ¶ 18.

**{21}**  When reviewing a trial court's decision to disqualify an attorney, we apply an abuse of discretion standard.  *Id.*  "An abuse of discretion suggests that the trial court's attitude in reaching its decision was unreasonable, arbitrary, or unconscionable." *Champoir v. Champoir*, 2019-Ohio-2235, 138 N.E.3d 530, ¶ 15 (8th Dist.), citing *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

**{22}**  There is an unavoidable conflict between the roles of advocate and witness.  *Id.,* citing *Amos v. Cohen,* 156 Ohio App.3d 492, 495, 2004-Ohio-1265, 806 N.E.2d 1014 (1st Dist.), citing *Mentor Lagoons, Inc. v. Rubin*, 31 Ohio St.3d 256,

257, 510 N.E.2d 379 (1987). When the basis for disqualification is that the attorney is a potential witness, courts have recognized that disqualification "should be viewed with disfavor because of [the] potential to interfere with a [litigant's] right to choose his own counsel and [the] 'strong potential for abuse.'" *A.B.B. Sanitec W., Inc.* at ¶ 1, quoting *United States v. Poulsen*, S.D. Ohio Case No. CR 2-06-129, 2007 U.S. Dist. LEXIS 27933 (Apr. 16, 2007). "Therefore, courts considering disqualification of counsel must be sensitive to the competing public interests of requiring professional conduct by an attorney and of permitting a party to retain the counsel of his choice." *Id.*

**{23}** Citing Prof.Cond.R. 3.7, the trial court found that

> Attorney Glick should be disqualified in the instant matter. Attorney Glick appears to be deeply involved in the plaintiff's business model, which defendants allege includes misuse of the sheriff's sale process. This business model is the basis of the instant lawsuit. Because the properties involved went through the sheriff's sale process, the courts and therefore Glick, as the attorney for the plaintiff, were necessary parts of the alleged process. The court finds that Glick is a necessary witness regarding his role in plaintiff's business model, and the actions he undertook in that role, as well as how those actions pertain to the instant case. Because of Glick's involvement in plaintiff's process in light of the allegations in the instant lawsuit, his testimony is unobtainable from another source. Furthermore, Glick's testimony is relevant and material to the issues being litigated in the instant case.

**{24}** In determining whether disqualification is appropriate, we are mindful that "[i]t is the burden of the party moving for disqualification of an attorney to demonstrate that the proposed testimony may be prejudicial to that attorney's client and that disqualification is necessary." *WFG Natl. Title Ins. Co. v. Meehan*, 8th Dist.

Cuyahoga No. 105677, 2018-Ohio-491 ¶ 24, citing *Mentor Lagoons, Inc. v. Teague*, 71 Ohio App.3d 719, 724, 595 N.E.2d 392 (11th Dist.1991).

**{25}** In the instant case, the trial court ruled on the parties' respective motions without an evidentiary hearing. "[T]he case law establishes that while a trial court is required to hold a hearing to consider whether a lawyer should be disqualified under Prof.Cond.R. 3.7, no particular type of hearing is required." *Reo v. Univ. Hosps. Health Sys.*, 11th Dist. Lake No. 2018-L-110, 2019-Ohio-1411, ¶ 34. An oral hearing is "generally unnecessary" as long as it is established that the court "has sufficient evidence to consider the required factors for disqualification * * *." *In re Carney*, 8th Dist. Cuyahoga No. 110034, 2021-Ohio-1819, ¶ 24.

**{26}** Disqualification is proper under Prof.Cond.R. 3.7 when a court finds that "the lawyer is likely to be a necessary witness," unless "1) the testimony relates to an uncontested issue; 2) the testimony relates to the nature and value of legal services; or 3) the disqualification of the lawyer would work substantial hardship on the client." Prof.Cond.R. 3.7(a).

**{27}** A "necessary" witness under Prof.Cond.R. 3.7 "is one whose testimony must be admissible and unobtainable through other trial witnesses." *Cty. Risk Sharing Auth. v. Robson*, 5th Dist. Licking No. 15-CA-62, 2016-Ohio-1460, ¶ 22, citing *King v. Pattison,* 5th Dist. Muskingum No. CT2013-0010, 2013-Ohio-4665, citing *Popa Land Co., Ltd. v. Fragnoli,* 9th Dist. Medina No. 08CA0062-M, 2009-Ohio-1299, ¶ 15. "Testimony may be relevant and even highly useful but still not strictly necessary." *Reo v. Univ. Hosps. Health Sys.*, 2019-Ohio-1411, 131 N.E.3d

986, ¶ 52 (11th Dist.), citing *Holbrook v. Benson*, 5th Dist. Stark No. 2013CA00045, 2013-Ohio-5307, ¶13.

{28} In determining whether a witness's testimony is "necessary" courts look at "the significance of the matters, weight of the testimony and availability of other evidence." *Carney* at ¶ 2, citing *Akron v. Carter*, 190 Ohio App.3d 420, 2010-Ohio-5462, 942 N.E.2d 409, ¶ 20 (9th Dist.), quoting *Puritas Metal Prods. v. Cole*, 9th Dist. Lorain Nos. 07CA009255, 07CA009257, and 07CA009259, 2008-Ohio-4653, ¶ 34.

{29} Disqualification is not warranted and a trial court abuses its discretion in disqualifying, unless it can be established that 1) the sought-after testimony was admissible, 2) the testimony was necessary in that it is a) relevant and material to the issue being litigated, and b) unobtainable from any other source. *Brown v. Spectrum Networks, Inc.*, 180 Ohio App.3d 99, 2008-Ohio-6687, 904 N.E.2d 576, ¶ 15 (1st Dist.).

{30} A review of the record in this case shows that while the trial court made the necessary findings for disqualification, the findings are unsupported by the record. Specifically, there was no evidentiary support for the trial court's finding that Glick's testimony was unobtainable from any other source.

{31} The trial court made its decision solely based on BTT's attachments to its motion to disqualify. These documents establish that Glick's involvement included the fact that he filed the paperwork to create COD Properties in Ohio, filed motions on behalf of COD Properties, and prepared deeds on behalf of COD

Properties. BTT's evidence does not establish that Glick's knowledge extended beyond what was necessary to draft documents on behalf of his client.

{32} The only other evidence BTT provided of Glick's knowledge of COD Properties' business were conclusory statements in their motion to disqualify. BTT did not include any affidavits from witnesses declaring firsthand knowledge of Glick's interactions with COD Properties or its principal member, Ostlund.

{33} Therefore, we find that there was a lack of evidence in the record from which the trial court could have adequately determined that Glick's testimony was necessary. The trial court focused on the portion of COD Properties' business model that involved the court system and Glick's activity in court to find that Glick's testimony was unobtainable elsewhere and therefore necessary. Unfortunately, the record is devoid of evidence upon which the trial court could have made that determination. There was no evidence presented as to what Glick's testimony would be beyond the filing of motions and preparation of documents for his client all of which BTT demonstrated it was able to determine from the public record. *See Fordeley v. Fordeley*, 11th Dist. Trumbull No. 2014-T-0079, 2015-Ohio-2610, ¶ 37 (trial court had insufficient evidence before it to determine necessity of lawyer's testimony when the substance of that testimony was unknown).

{34} Furthermore, the documents BTT submitted as attachments to its motion identified several witnesses who could testify as to BTT's defense, such as COD Properties' principal member, Ostlund. These documents included the deeds COD Properties issued transferring the properties it acquired at sheriff's sale. All

four deeds were signed by Ostlund. Furthermore, BTT attached a joint venture agreement to its motion that described COD Properties' financing for its business in Ohio. That document named Ostlund, acting as COD properties, as a party, as well as another potential witness.

{35} Based on the foregoing, the trial court abused its discretion when it found that Glick's testimony was unobtainable from any other witness. Consequently, the trial court failed to establish that Glick's testimony was necessary pursuant to Prof.Cond.R. 3.7. As a result, the trial court abused its discretion in disqualifying Glick.

{36} Accordingly, COD Properties' second and fifth assignments of error are sustained. The resolution of assignments of error two and five renders' assignments of error one, three, four, six, and seven moot.

{37} In the eighth assignment of error, COD Properties cites as error the trial court's refusal to grant its Civ.R. 60(B) motion to alter or amend a judgment. However, although COD Properties has assigned this as error, they did not analyze or argue this issue in their brief. "The court may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based or fails to argue the assignment separately in the brief, as required under App.R. 16(A)." App.R. 12(A)(2); *Curtin v. Mabin*, 8th Dist. Cuyahoga No. 89993, 2008-Ohio-2040, ¶ 8.

{38} Judgment reversed and remanded for further proceedings.

It is ordered that appellant recover from appellees costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
EMANUELLA D. GROVES, JUDGE

MARY J. BOYLE, P.J., and
KATHLEEN ANN KEOUGH, J., CONCUR